# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

**In Re:**

Kenneth Allen Lavender ) CASE NO. 09-06429
    Debtor. ) Chapter 7
) Hon. George C. Paine, II

First Federal Bank )
    Plaintiff )

v. ) Adv. No. 09-0247A

Kenneth Allen Lavender )
    Defendant. )

_____

**MEMORANDUM**
_____

First Federal Bank ("FFB") filed this adversary proceeding against Kenneth A. Lavender ("Debtor") seeking nondischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4) and/or § 523(a)(6) stemming from a series of notes between the parties and the debtor's disposition of the bank's collateral. For reasons hereinafter cited, the court DISMISSES FFB's adversary proceeding, and finds that the debt is discharged. The following constitutes the court's findings of fact and conclusions of law.

The debtor and FFB had a long-standing and well-known banking relationship. Mr. Lavender had at least eight loans at the bank in addition to the loans at issue

in this case. The bank's loan officer, Marty Smith, testified that he, and others at FFB, such as Ronnie Sullivan, had been working with Mr. Lavender for a long time and were very familiar with Mr. Lavender's financial situation. Mr. Lavender operated Lavender's Used Cars, and Mr. Smith testified that FFB frequently loaned Mr. Lavender $2,000 to $5,000 to purchase cars that was then paid back upon the sale of the car. According to Mr. Lavender's testimony, once his used car business started to fail, he began having overdrafts at the bank related to his business, and he and the bank began consolidating notes to cure the overdrafts.

On March 23, 2005, FFB and the debtor entered into an extension of credit agreement in the amount of $34,655.01. Of that amount $15,000 was used to cure overdrafts in Mr. Lavender's demand deposit account, and the remainder was used to consolidate two previously extended and then outstanding loans. According to the loan documents, payment was secured by, a 17 foot long 2001 Pro Team Bass Tracker boat, a 2001 Mercury 75 horse-power outboard motor, a 2001 Trailstar Trailer, and a 1999 Honda TRX off road vehicle. At the time the note was signed, Mr. Lavender also signed a document requiring insurance for the collateral. Mr. Smith testified that the bank regularly sends a representative to inspect and document the collateral, but no such records exist with respect to this loan. He did not have any records showing proof of insurance on the collateral, and Mr. Lavender testified that he had never purchased insurance. Mr. Smith did not know the value of the collateral now or when it was pledged.

In May 2006, FFB entered into an extension of credit for $8,884.26. Then on July 30, 2007 FFB entered into another extension of credit refinancing and consolidating the March 2005 loan and the May 2006 loan in the amount of $37,414.06. Payment of the July 2007 note indicates that it is secured by the same

collateral contained in the March 2005 note with the same agreement to provide insurance being signed by Mr. Lavender. The debtor defaulted on the July 2007 note. FFB sued the debtor in the Chancery Court for Williamson County and obtained a default judgment against him in the amount of $50,105.64. Mr. Lavender then filed his chapter 7 bankruptcy case on June 6, 2009.

FFB asks this court to find that the debt owed by Mr. Lavender to FFB is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and/or § 523(a)(6) because Mr. Lavender, by his own admission, sold the collateral securing the debtor's loans. Mr. Lavender testified that he had many loans with at least two different loan officers (Marty Smith and Ronnie Sullivan) over the years at FFB. The boat, trailer, and motor (boat package), and the Honda ATV were financed by loans from FFB. The debtor explained that the Honda ATV loan was paid off, and FFB released the title to him. Mr. Lavender then sold the ATV to a third party sometime in 2001, well prior to the 2005 loan.

The boat package loan was never paid off, and Mr. Lavender believes the balance of that loan was rolled into the consolidated loans that FFB began requiring when his deposit account was overdrafted. The debtor convincingly testified that he, Ronnie Sullivan and Marty Smith were working together to keep the loans off FFB's delinquency rolls, and therefore continually consolidated and refinanced. In fact, in 2005 when the first overdraft loan occurred, Mr. Lavender testified that despite the loan documents noting the Honda ATV as collateral, he no longer owned the ATV and the bank had released that title to him four years prior.

After the 2005 loan, the parties continued to do business, and the debtor even characterized Mr. Smith and Mr. Sullivan as friends. Mr. Lavender testified that one

day in 2006, when Mr. Smith was on the debtor's car lot, he told Mr. Smith that he wanted to sell his boat (package) and buy a new boat to substitute as collateral. Mr. Lavender testified that Mr. Smith told him he could do what he needed to do. The debtor did sell the boat package in 2006 for about $6,000. It is unclear whether he then bought a new boat or not.[1] In 2007, when the next and last refinance and consolidation of loans between the parties occurred, the boat package was nonetheless still listed as collateral securing the loan. Mr. Lavender testified that he did not read the renewal documentation and did not even realize the same collateral was still being pledged for the loan.

FFB alleges that the debtor fraudulently or willfully and maliciously disposed of their collateral under the 2005 and 2007 loans rendering the default judgment entered against Mr. Lavender in Chancery Court in the amount of $50,105.64 nondischargeable. The debtor alleges that it was known to FFB at all times due to the parties' course of dealings both formally and informally that this collateral was no longer in his possession and that FFB renewed the loans to keep the delinquent account off the bank's rolls.

Section 523(a)(4) denies a discharge for debts incurred by:

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4). Neither embezzlement nor larceny are conditioned upon the existence of an action taken in a "fiduciary capacity," and for Section 523(a)(4) purposes, federal common law, rather than state law, controls the meaning of these

---

[1] If the debtor did in fact purchase another boat, the court would have required that boat to be substituted as collateral based on the parties course of informal dealing. The court, however, heard no proof to that effect.

4-U.S. Bankruptcy Court, M.D. Tenn.

terms. **Brady v. McAllister (In re Brady)**, 101 F.3d 1165, 1172-73 (6th Cir.1996).

Larceny is different than embezzlement in that the original taking must have been unlawful, and is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." **Graffice v. Grim (In re Grim)**, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003).

The Sixth Circuit has defined embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." **Brady v. McAllister (In re Brady)**, 101 F.3d 1165, 1172-73 (6th Cir.1996) (citations omitted). A creditor must prove three elements to establish embezzlement: (1) "that he entrusted his property to the debtor," (2) that "the debtor appropriated the property for a use other than that for which it was entrusted," and (3) that "the circumstances indicate fraud." **Id.** at 1173 (citing **Ball v. McDowell (In re McDowell)**, 162 B.R. 136, 140 (Bankr. N.D. Ohio 1993)).

The burden was on FFB to show by a preponderance of the evidence that Mr. Lavender "fraudulently and wrongfully" took FFB's collateral with intent to convert the collateral without FFB's consent or that Mr. Lavender was entrusted with the collateral, that he used the collateral in a way for which it was not intended, and the circumstances indicate fraud. FFB did not meet this burden.

Mr. Lavender credibly testified that he and FFB had a long-standing banking relationship that involved informal and formal documentation of their agreements. The collateral that Mr. Lavender pledged for the 2005 loan included collateral that

the bank had previously financed and then released the lien (the Honda ATV). Although it is apparently bank practice to inspect and document the collateral, there are no records of this in Mr. Lavender's bank file. Although Mr. Lavender executed an agreement to provide insurance, his unrebutted testimony was that he never purchased insurance. The bank never required Lavender to provide proof of insurance. Although the parties had written agreements, Mr. Smith told Mr. Lavender he could substitute his 2001 boat package for a new boat but when the 2007 loan was renewed, FFB did not question, inspect, or require proof of insurance on the collateral listed which was clearly worth far less than the $37,414.06 advanced.

The parties in this case just continued to roll the debts repeatedly without investigation into the collateral, without reference to the collateral's value, without proof of insurance, and without the formality a new loan customer might encounter. These were small town bank transactions with a long-time customer. The court finds no proof of fraud on Mr. Lavender's part. There was no intent to convert FFB's collateral without FFB's consent and no circumstances that indicate fraud. FFB simply cannot meet the burden of proof to establish that these debts should be nondischargeable.

To prevail under § 523(a) (6), FFB must prove by a preponderance of the evidence the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." **Kawaauhau v. Geiger**, 523 U.S. 57, 63, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). It is insufficient that a reasonable debtor "should have known" that his conduct risked injury to others. **Markowitz v. Campbell (In re Markowitz)**, 190 F.3d 455, 466 n. 10 (6th Cir.1999)). Rather, the debtor must "will or desire harm, or believe injury is substantially certain to

occur as a result of his behavior." **Id**.

"An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury." **Cash Am. Fin. Servs. v. Fox (In re Fox), 370 B.R. 104, 119 (B.A.P. 6th Cir.2007)**. The bankruptcy court is required to look into the debtor's mind subjectively in order to determine whether a debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act. **Monsanto Co. v. Wood (In re Wood)**, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004). "An act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse.' " **Fox**, 370 B.R. at 119 (**quoting Wheeler v. Laudani**, 783 F.2d 610, 615 (6th Cir.1986)). " 'Malicious' acts do 'not require ill-will or specific intent to do harm.' " **Id**. However, "[m]ere negligence is not sufficient to except a debt from discharge under § 523(a)(6)." **Fox,** 370 B.R. at 119. **Whitaker v. Koenig**, ___ B.R. ___, 2009 WL 3241744, 6 (E.D. Tenn., Sept. 30, 2009).

For all the reasons stated above with regard to FFB's § 523(a)(4) claim, the court finds that FFB did not carry its burden of proof.

The court, therefore, DISMISSES First Federal Bank's adversary proceeding and finds that the debts owed to FFB by the debtor are DISCHARGED.[2] The court

---

[2] At the close of proof, FFB asked to amend the pleadings to conform to the proof to allege that the debt was also nondischargeable pursuant to 11 U.S.C. § 523(a)(2) as fraud in the extension of credit. Rule 15(b) of the Federal Rules of Civil Procedure made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7015 allows for such a motion to be granted at the discretion of the trial court if the defendant has had fair opportunity to present relevant evidence to rebut the new count. In this case, the court is inclined to deny the motion based on the failure of the defendant to raise the issue earlier. However, in an abundance of caution the court GRANTS the defendant's motion but finds that for all the reasons stated herein with respect to the § 523(a)(4) and (a)(6)

instructs counsel for the debtor to prepare an order not inconsistent with this court's Memorandum within ten (10) days of entry of this Memorandum.

**THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE**

---

counts, that FFB was unable to show by a preponderance of the evidence that the debt should be nondischargeable pursuant to § 523(a)(2).